CATHERINE E. PALMER, PLAINTIFF, *v.* THE COMMERCIAL TRAVELERS' MUTUAL ACCIDENT ASSOCIATION OF AMERICA, DEFENDANT.

*Accident insurance policy — time of inception of contract — notice of death to the company — contract containing* ultra vires *conditions — death occurring from an injury after the expiration of the time fixed by the policy.*

On a submission of controversy without action, under section 1279 of the Code of Civil Procedure, it appeared that the plaintiff, Catherine E. Palmer, claimed to recover the sum of $5,000 as the amount of an insurance benefit, payable to her as the beneficiary of her husband, Joseph H. Palmer, a deceased member of the Commercial Travelers' Mutual Accident Association. On August 3, 1887, Joseph H. Palmer, then of Syracuse, executed and sent to the aforesaid association, the defendant, at Utica, N. Y., an application for membership in

the form adopted by its board of directors, stating the name of the plaintiff as the beneficiary, and that he understood that *the certificate* would not cover accidental injuries which might happen under the influence of intoxicating drinks. On August fourth this application, together with the initiation fee and other sums required by its constitution and by-laws to be paid, were received by the defendant, and at a meeting of its board of directors, on August fifth, the application was examined and approved and Palmer was admitted to membership. The record showed that the secretary presented nineteen applications for membership, which were examined and approved and accepted for membership, among which was Palmer's.

The certificate, which was thereupon sent to Palmer, and was in the form adopted by the board of directors at that time, and not afterwards changed, provided, among other things, that the said Joseph H. Palmer should only recover the sum named therein in case he should have sustained bodily injuries effected through external, violent or accidental means, and that such injuries should have occasioned death within ninety days from the happening thereof; and also provided that it was issued and accepted, subject to all the provisions, conditions, limitations and exceptions therein contained or referred to, and of the by-laws of the association; one of the conditions being that, in the event of any accident for which any claim should be made, or in case of death resulting therefrom, immediate notice should be given in writing, addressed to the secretary at Utica, stating certain things, and that the failure to give such notice would invalidate all claim under the certificate.

On August 3, 1888, Palmer died from injuries received, accidentally, on March twenty-eighth. No notice of the accident was given to the defendant until after the death. Palmer's widow, who had no information as to the membership of her husband until August tenth, wrote, on the fifteenth, to the association for blank proofs of death, received them on August nineteenth, and presented to the association, on September eighth, proofs of death on the blanks so received.

The association refused to pay the loss on the ground that the certificate of membership was void as the association had not been immediately notified of the accident, and as the injuries sustained by the insured did not occasion his death within ninety days from the happening thereof.

The plaintiff claimed that the certificate was not a bar to the contract, and that she was not bound by its conditions, and claimed that the contract was complete upon the passage by the board of directors of the resolution approving the application and accepting Palmer as a member of the association.

*Held*, that the resolution was preliminary to the contract, and that the issuing of the certificate was the corporate act which completed it, until the execution and delivery of which it was incomplete.

That the presumption was that Palmer expected to receive a certificate in the usual form issued by the defendant, and that this presumption was strengthened by the fact that Palmer kept the certificate sent to him, and thereafter paid his dues and assessments.

It was claimed by the plaintiff that the board of directors had no power to make such a contract as was indicated by the certificate.

*Held,* that as the contract in that form was the only one made and delivered on the part of the association, that if that contract was void for want of power, then the widow had no ground to stand on.

It was further urged by the plaintiff that the provision that death must happen within ninety days after the accident was not binding upon the insured, for the reason that it was in conflict with the provisions of its constitution on that subject.

*Held,* that the plaintiff could not accept one part of the contract and reject another.

That the association was not bound to accept the candidate for membership, and if, in so doing, it imposed conditions beyond the constitutional powers given it by its constitution, but not illegal, and these conditions were repudiated by the other party to the contract, that then there was no acceptance thereof and it never took effect.

That there was nothing in this case upon which the widow could base an estoppel, as there was nothing to show that Palmer expected to receive anything different from what he, in fact, did receive.

That the fact that the death did not occur within ninety days of the happening of the accident was a perfect defense.

SUBMISSION of a controversy, without action upon admitted facts, under section 1279 of the Code of Civil Procedure.

The plaintiff claims to recover the sum of $5,000, as the amount of an insurance benefit, payable to her as the beneficiary of her husband, Joseph H. Palmer, a deceased member of the defendant association. The defense is that the defendant was not immediately notified of the accident, and had no knowledge of it until after decedent's death, nearly five months after the accident; that the notice of death was not immediate; that the injuries sustained by the decedent did not occasion his death within ninety days from the happening thereof.

The defendant is a corporation, duly incorporated on March 20, 1883, under chapter 319 of the Laws of 1848, entitled " An act for the incorporation of benevolent, charitable, scientific and missionary societies." and the acts amendatory thereof, and its particular business and object, as stated in its certificate of incorporation, is " the collection and accumulation of a fund to be held and used for the mutual benefit and protection of its members (or their beneficiaries) who shall have sustained, while members of the association, bodily injury, whether fatal or disabling, effected through or by external, violent and accidental means, and under such conditions, provisions, limitations and exceptions as may be established under the constitution, rules and by-laws of the association."

The association, immediately upon its incorporation, adopted a constitution, by-laws and rules, which, among other things, provided for the election of a president and board of directors; that the president be recognized as the legal representative of the association, and execute all papers legally demanded or requisite in connection with the affairs of the association, subject, however, to instructions, with respect to the same, of the board of directors; that the duty of the board of directors should be to take a general supervision of the business of the association, "prescribe the form and manner of applications for membership, and decide upon the same, determine the qualifications and eligibility of persons applying for membership, decide on all proofs of accident, and death by accident, order assessments to pay weekly indemnities and to pay death losses," execute and carry into effect the provisions therein contained not otherwise provided for, make report of their action and proceedings to the membership at each annual meeting; that (art. 5, § 4), "upon sufficient proof of the death of any member by bodily injuries effected through external, violent and accidental means, each member shall be assessed the sum of two dollars, and the amount so derived, not exceeding in amount the limit prescribed, shall be paid to the beneficiary of the deceased member;" that (art. 6, § 3), "upon suitable proof of the death by accident of any member of the association, the board of directors shall order a special assessment upon each and every member of the association of two dollars; the amount so collected, not exceeding five thousand dollars, shall be paid to the person or persons whose names shall, at the time of the death of such member, be found recorded as his last designated beneficiaries, or, in case of their death, to their legal representatives or heirs; and the receipt of the proper party in either case shall be conclusive and final, except when such member shall have, in his last will and testament, left the amount to other parties than the one designated on the books of the association, and legal notice of the probate of such will shall have been served upon the secretary of the association, before the payment of the loss shall have been made;" that any failure to comply with the requirement of the constitution and by-laws shall operate against such member in respect to his claim upon the benefits of the association, and all such cases shall be decided by the board of directors; that (by-laws,

art. 3, § 4) "the board of directors may make such rules for their government and the transaction of their business (not provided for in the constitution, or otherwise provided by law) as they may deem necessary and best."

On the 3d of August, 1887, Joseph H. Palmer, then of Syracuse, N. Y., executed and sent to the defendant at Utica, N. Y., an application for membership in the form adopted by the board of directors of defendant, stating, among other things, the name of the plaintiff as the person to whom death loss was to be paid, and that he understood that the certificate of membership would not cover accidental injuries which might happen while under the influence of intoxicating drinks or in consequence of such condition. No other reference to a certificate of membership was made in the application. On August 4, 1887, this application, together with the initiation fee and the other sums required by the constitution and by-laws to be paid, was received by defendant from Palmer, and at a meeting of the board of directors of defendant on the evening of Friday, August 5, 1887, the application was examined and approved, and he was admitted to membership in said association by action then taken by said board, the record reading as follows: "The secretary presented the following nineteen applications for membership, which were examined and approved, and at 8—13 were accepted members, viz.: * * * J. H. Palmer, Syracuse, N. Y." Thereafter, and on the following day, the president and secretary of the association executed and mailed to Palmer a certificate of membership, which was received by him in due course of mail and remained in his possession until his death. This certificate was in the form adopted by the board of directors on March 24, 1883, and not afterwards changed. It is dated August 5, 1887, purports to be the act of the incorporation and under its corporate seal, and in form constitutes Palmer a member in accordance with its articles of incorporation and by-laws, and agrees to pay "to his wife Catherine E. Palmer, her executors, administrators or assigns, the sum represented by the payment of two dollars by each member of said association, as provided by the by-laws, which sum, however, is in no event to exceed the sum of five thousand dollars, said payment to be made within ninety days after satisfactory proof shall have been duly filed with its secretary that the said Joseph H. Palmer at any time during the continuance

of this membership, shall have sustained bodily injuries effected through external, violent or accidental means, within the intent and meaning of this contract, and the conditions hereto annexed, and such injuries alone shall have occasioned death within ninety days from the happening thereof."

It contained a proviso " that this certificate has been issued and accepted, subject to all the provisions, conditions, limitations and exceptions herein contained or referred to, and of the by-laws of the association, which are referred to and made part of this contract," and one of the conditions was that " in the event of any accident or injury for which any claim shall be made under this certificate, or in case of death resulting therefrom, immediate notice shall be given in writing, addressed to the secretary at Utica," stating certain things, and that a failure to give such notice should invalidate all claim under the certificate.

Palmer paid all the dues, fees and assessments required by the rules of the defendant, and at his death was a member in good standing. On March 28, 1888, he accidentally received injuries from which he died on August 3, 1888. His death was caused solely by such injuries and through external, violent and accidental means. No notice of such accident or of such injuries, was given to the defendant until after the death, and defendant had no knowledge of the same until after the death.

The plaintiff had no information of the membership of her husband until the 10th of August, 1888, nor did she know of the certificate of membership or its provisions, until after August 19, 1888. On the 15th of August, 1888, the agent of plaintiff wrote the defendant for blank proofs of death, and received them on August nineteenth, and on September 8, 1888, the plaintiff presented the proofs of death on the blanks so received. On November 17, 1888, the defendant rejected plaintiff's claim, its secretary writing the agent of the plaintiff that the board of directors had concluded that they had no authority to order an assessment upon the membership on account of the death of Palmer. An assessment would have yielded $5,000 and upwards.

*Knapp, Nottingham & Andrews,* for the plaintiff.

*M. W. Van Auken,* for the defendant.

MERWIN, J.:

The defense in this case is based on the provisions of the certificate of membership. The plaintiff claims that that certificate was not a part of the contract, and that she is not bound by its conditions. Her position is that the contract was complete upon the passage by the board of directors, upon Friday evening, of the resolution approving the application and accepting Palmer as a member, and that the certificate executed the next day could attach no condition not specified in the constitution or by-laws.

The certificate bears date the same as the resolution, operates as of that date, is under the corporate seal and is executed by the officer who, by the provisions of its constitution, is to be recognized as the legal representative of the association, and the one to execute all papers legally demanded or requisite in connection with the affairs of the association. It purports to be the corporate act, constituting the membership and stating the contract on the part of the corporation. It was in the form adopted by the board at its organization and not afterwards changed. The resolution was preliminary, and the certificate was the corporate act and deed. The matter was not completed until the execution and delivery of the certificate.

In determining what was, in fact, the corporate act at that time the resolution and certificate must be taken together. Very clearly that was the intention of the officers of the corporation. Their membership contracts had always been in that way, and there was no reason for a change in this instance. That was the contract they assumed to make in conducting the affairs of the corporation. I can see no reason to doubt that the contract, which in this case was proffered by the corporation to Palmer in return for his application, was represented by the certificate. That was what they sent to Palmer, and was the only communication from defendant to Palmer of its manner of action upon the subject; the only obligation delivered by defendant. This Palmer received and kept. That Palmer expected to receive a certificate is indicated by a reference to one in the application. The presumption is he expected to receive a certificate in the usual form issued by the defendant ( *Van Loan* v. *Farmers' Mut. Fire Ins. Assn.*, 90 N. Y., 285; *De Grove* v. *Metropolitan Ins. Co.*, 61 id., 602); and this presumption is strengthened

by the fact that Palmer kept the certificate sent him and thereafter paid his dues and assessments. It was apparently not contemplated by either party that there should be anything else that represented the obligation of defendant except the certificate. There is nothing to indicate that Palmer had any reason to believe that the contract with him would be any different from the usual form.

The plaintiff in this respect must occupy her husband's position. I see no way to avoid the conclusion that the certificate must be considered in determining the obligations of the defendant. The certificate must be deemed to indicate what both parties meant and understood by the acceptance mentioned in the resolution. The case of *Fried* v. *Royal Insurance Company* (50 N. Y., 243) is cited by plaintiff. There the plaintiff applied to the agent of the defendant in New York for an insurance on the life of her husband, presented a proposal and paid the premium, and received from the agent a receipt stating that the proposal would be forwarded to the home office for acceptance, and if accepted a policy would be issued, and if declined the premium would be returned, and in case the husband died before the decision was received the sum insured was to be paid. The proposal was forwarded and accepted, a policy issued by defendant and forwarded to the agent to be executed and delivered. The agent executed it, but declined to deliver it, having been advised that the health of the assured had declined, and he had standing instructions not to deliver in such a case. It was held that the contract and acceptance were unqualified and could not be limited by private instructions to the agent, stress being laid on the idea that in case the party died before decision the sum insured was to be paid, and that the instructions to the agent did not apply to a case where the premium was paid. The case before us is very different.

But the plaintiff says that the board of directors had no power to make such a contract as is indicated by the certificate. If, as I think it must be held, the contract in that form was the only one presented and delivered on the part of the defendant, and that is void for want of power, then the plaintiff has no contract to stand on. It is the one presented to and received by Palmer, or none.

It is further urged that the provision that death must happen

within ninety days after the accident, is not binding upon the insured, for the reason that it is in conflict with the provisions of the constitution on the subject. The plaintiff cannot accept one part of the contract and reject another. The question for plaintiff is not what was the power of the defendant, but what was the contract in fact? The defendant or its board of directors was not bound to accept the candidate for membership. If, in doing so, it imposed conditions beyond its constitution, and those conditions were repudiated by the other party, then there was no meeting of minds, there was no acceptance. But assume the plaintiff can raise the question that the board of directors had no right to impose the condition referred to, let us see how the matter stands. By the statute under which the defendant was incorporated, it was provided (chap. 319 of 1848, § 3) that the directors "shall have the control and management of the affairs and funds of said society." By the constitution and by-laws they are given the general supervision of the business, the right to prescribe the form and manner of applications for membership, and decide upon the same; decide on all proofs of accident and of death by accident; execute and carry into effect the provisions not otherwise provided for; make such rules for their government and the transaction of their business, not provided for in the constitution, or otherwise provided by law, as they may deem necessary and best. The constitution provided in one section that "upon sufficient proof of death," through certain means, each member should be assessed the sum of two dollars, and the amount so derived, not exceeding a certain limit, be paid to the beneficiary; and in another section it provided that, "upon suitable proof of the death by accident," the board of directors should order a special assessment upon each member of two dollars, and the amount so collected, not exceeding $5,000, be paid to the beneficiary. What was to be deemed sufficient proof or suitable proof was not stated. That was for the board of directors to determine. There was no provision as to when the money should be paid to the beneficiary, or as to when the death must happen with reference to the accident, or as to what notice should be given. Can it reasonably be assumed that it was designed to leave the matter entirely indefinite as to when, with reference to the time of

the accident, the death should happen or the notice be given? That is not the usual course of such associations and was not so understood here. For the board, immediately upon its organization, adopted the form of certificate in question, and have always used it. In such use the association apparently acquiesced. By the broad language of the statute, fixing the power of the directors, they had the right to adopt the certificate and impose the condition in question. In view of the action of the directors and the acquiescence of the association, we have not, I think, any right to assume that the association designed to limit the power of the directors in this regard. The association did not specifically make any restriction. The more reasonable inference, in view of the subsequent action, is that this was a matter left for the directors to regulate in determining what was suitable proof or under their general powers.

Be this as it may, I see no escape from the conclusion, upon the other feature of the case, that the only membership proffered or accepted by the defendant or its board of directors, or expected by the recipient Palmer, was the one indicated by the certificate, and that under that the plaintiff, if she takes at all, necessarily takes subject to the conditions therein stated.

There is nothing in the case upon which plaintiff can base an estoppel. There is nothing to show that Palmer expected to receive anything different from what he, in. fact, did receive. Nor is there anything in the manner of the refusal of the defendant to pay the claim that affects its right to raise the question here considered. In view of the conclusions thus far, it is not necessary to consider the question as to want of immediate notice of the accident or the death, which is raised by the defendant. There is no question but that the conditions of the certificate, if effective, are upon the facts a perfect defense. The death did not occur within ninety days from the happening of the accident. No claim is made on account of temporary or total disability simply, but only for the death. It follows that the plaintiff is not entitled to recover.

HARDIN, P. J., and MARTIN, J., concurred.

Judgment ordered for the defendant upon the submission, with costs. Form of judgment to be settled before MERWIN, J.